UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
GUO HUA JIN,                                                            :
                                                                        :
                                        Plaintiff,                      :     Case No. 20-cv-_____-_____
                                                                        :
                                                                        :     COMPLAINT
              v.                                                        :
                                                                        :     DEMAND FOR JURY TRIAL
                                                                        :
THE CITY OF NEW YORK, POLICE                                            :
OFFICER ARIELLE GIGANTE, POLICE                                        :
OFFICER "JOHN DOE" AND POLICE                                          :
OFFICER "JANE DOE,"*                                                   :
                                                                        :
                                        Defendants.                     :
                                                                        :
*Does signify unidentified police officers.                             :
------------------------------------------------------------------------X

      Plaintiff Guo Hua Jin (hereinafter "plaintiff"), by and through her attorney herein, Michael R.

Curran, Esq., alleges the following in connection with this consolidated suit in negligence and violation of

plaintiff's civil rights:

<u>NATURE OF THE ACTION</u>

1.    Plaintiff brings this action for compensatory damages, punitive damages and attorney's fees

pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violation of her civil rights under 42 U.S.C. § 1983

and Fourth and Fourteenth Amendments to the United States Constitution.  Plaintiff also asserts claims

under New York law as to the government actors.

<u>JURISDICTION</u>

2.    This Court has jurisdiction over plaintiff's federal law claims under 28 U.S.C. §§ 1331,

1343(a)(3),(4).

3.    This Court may also exercise supplemental jurisdiction over the plaintiff's state law claims that

arise from the same facts and circumstances under 28 U.S.C. § 1367 as to the state actors.

### JURY TRIAL DEMANDED

4.      Plaintiff demands trial by jury of all issues properly triable thereby.

### VENUE

5.      Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391(b),(c), as all events herein occurred within the territorial Eastern District of New York.

### CONDITION PRECEDENT SATISFIED AS TO THE MUNICIPALITY

6.      As to the municipality of the City of New York, a Notice of Claim was timely filed on August 1, 2019 with the New York City Comptroller at 1 Centre Street, New York, New York 10007, following dismissal of the criminal action brought against plaintiff on May 15, 2019.  The Notice of Claim was assigned Claim No. **2019PI021053** by the City of New York.  Plaintiff appeared for the requisite hearing pursuant to Section 50-H of the General Municipal Law held on October 11, 2029, which was terminated due to problems with the interpreter, and finally on October 29, 2019, which was completed, at the private law offices of a firm retained by the City of New York.  These actions have satisfied the condition precedent for bringing a legal action against the City of New York, its subdivisions and individual actors.

### THE PARTIES

7.      Plaintiff GUO HUA JIN is a United States resident alien ("green card holder") and citizen and resident of the City and State of New York, residing in Queens County, New York.

8.      That at all times herein mentioned, defendant CITY OF NEW YORK (hereinafter "City") was and is a municipal corporation, duly organized and existing under and by virtue of the laws of the State of New York.

9.      That at all times herein mentioned, defendant City operated, controlled and maintained a municipal

police force known as the NEW YORK CITY POLICE DEPARTMENT (hereinafter "NYPD"), who were empowered and authorized to arrest, detain, book, prepare paperwork on, assign NYSIDs to, notify federal law enforcement entities of and produce for prosecution criminal suspects, perpetrators or accused. The NYPD employed the individual defendant Police Officers in this matter.

10.     Defendant Police Officer ARIELLE GIGANTE (hereinafter "P.O. Gigante"), at all times herein, was employed by the NYPD at the 109th Police Precinct.

11.     That all times herein mentioned, defendant P.O. Gigante was acting within the course and scope of her employment with defendant City and the NYPD.

12.     That at all times herein mentioned, defendant P.O. Gigante was acting under color of state law.

13.     Defendant P.O. Gigante is sued herein in both her individual and official capacities.

14.     Defendant Police Officer "JOHN DOE" (hereinafter "P.O. John Doe"), at all times herein, was employed by the NYPD at the 109th Police Precinct.

15.     That all times herein mentioned, defendant P.O. John Doe was acting within the course and scope of his employment with defendant City and the NYPD.

16.     That at all times herein mentioned, defendant P.O. John Doe was acting under color of state law.

17.     Defendant P.O. John Doe is sued herein in both his individual and official capacities.

18.     Defendant Police Officer "JANE DOE" (hereinafter "P.O. Jane Doe"), at all times herein, was employed by the NYPD at the 109th Police Precinct.

19.     That all times herein mentioned, defendant P.O. Jane Doe was acting within the course and scope of her employment with defendant City and the NYPD.

20.     That at all times herein mentioned, defendant P.O. Jane Doe was acting under color of state law.

21.     Defendant P.O. Jane Doe is sued herein in both her individual and official capacities.

### STATEMENT OF FACTS

22.     The facts stated in this Complaint are based, *inter alia*, on the personal knowledge of plaintiff regarding events in which she was directly involved and "upon information and belief." The sources of "upon information and belief" factual statements are either from pure observations of the plaintiff based upon her own personal knowledge or are derived from documents from the underlying criminal prosecution or public documents from public sources. These sources may be incomplete. The Complaint is of necessity drawn without the benefit of full discovery proceedings.

23.     Plaintiff restates and realleges the allegations contained in Paragraphs "1" through "22" above as if set forth more fully herein.

24.     On April 13, 2019, plaintiff went to have a visitation with her minor son, who usually stayed informally at that time at the home of the son's paternal grandparents on weekends.

25.     The home of the paternal grandparents, listed in the criminal complaint as the home of "Xianjiu He," grandfather, is located at 140-16 34th Avenue, Apt. 406, Flushing, New York ("He residence").

26.     In accord with the child custody agreement in force with plaintiff's divorce from the child's father, the child is supposed to reside with plaintiff's ex-husband in the State of Connecticut, where plaintiff normally had formal visitation on each Tuesday. The paternal grandparents have no custodial rights.

27.     At the time of the incident herein, the ex-husband would leave the plaintiff's son with the paternal grandparents on weekends, where the plaintiff would see the boy. This was a regular arrangement.

28.     On the date of the incident herein, April 13, 2019, the plaintiff had an additional reason to see her son: when plaintiff had seen her son on the Tuesday prior in Connecticut the son had had a black eye. The ex-husband and father had explained the prior Tuesday that the black eye was the result of an accident.

29.     The plaintiff was very concerned because she felt the ex-husband's explanation was inadequate.

Because the son of plaintiff is a mute (cannot speak), he could not say what had happened to him.

30.     Plaintiff states that her ex-husband has remarried and has a child or children with his new wife but plaintiff feels the ex-husband does not really want the son between the ex-husband and plaintiff.   She believes that this situation probably affects the boy emotionally.

31.     Plaintiff is not capable of having the son live with her because she works many hours at a job in which she makes little money and is not capable of caring for her son properly.   When her immigration status is changed to U.S. citizenship, she will sponsor her parents to come and help care for her son.

32.     On April 13, 2019, when plaintiff went to the He residence, the paternal grandparents were not happy to see plaintiff because the ex-husband told them about plaintiff being upset about the boy's eye.

33.     Plaintiff was admitted to the apartment of the paternal grandparents and the plaintiff's son came up to her in a very emotional state and wanted the plaintiff—his mother—to hold him.   (The boy is mute.)

34.     Plaintiff saw the boy's black eye again and began to cry with the boy and to complain about what had happened to the boy to the paternal grandparents.

35.     At that point, the paternal grandparents became very angry and roughly tried to pull the boy away from plaintiff possibly hurting the boy and causing him to cry.

36.     The paternal grandparents then began beating the plaintiff all over her body, causing bruising that was very easy to observe.

37.     At the time of the incident, plaintiff weighed 92 pounds, while each paternal grandparent weighed, upon information and belief, in the realm of 150 pounds.

38.     Police records inaccurately state plaintiff weighed 110 pounds.

39.     The paternal grandparents opened the door to the He residence and pushed plaintiff out into the hallway, where they continued to strike her.

40.     Next door neighbors to the He residence, a Latinx couple, came into the hallway and observed what was happening and, upon information and belief, objected to the paternal grandparents striking plaintiff.

41.     Plaintiff, in a confused state, began to leave the premises without her bag or cell phone.

42.     Police records state plaintiff hit the paternal grandfather on the arm with an umbrella, but plaintiff had no umbrella.  The records state that this umbrella plaintiff did not have was a "deadly weapon."

43.     Plaintiff remembered she had left her possessions and returned to the hallway to retrieve her bag and cell phone.

44.     In the interim, one of the sons of the paternal grandparents, who was offsite and did not observe anything of what had occurred, called 911 and apparently lied to the dispatcher.

45.     When plaintiff returned to the hallway, there were five or six police present in the hallway.

46.      Among the responding officers were P.O. Gigante, Tax Reg. #962106, P.O. John Doe, Tax Reg. unknown and P.O. Jane Doe, Tax Reg. unknown from the 109th Police Precinct.

47.     The officers then came to plaintiff and, presumably, defendant P.O. Gigante asked plaintiff her name.  Plaintiff said her name and the police officers immediately arrested the plaintiff.  P.O. Gigante was assisted by P.O. John Doe and P.O. Jane Doe.

48.     Plaintiff told her she had been attacked and showed the police officers the extensive bruising all over her arms, legs, her body.  The police would not listen to her.

49.     One of the police officers, possibly P.O. Gigante, in sum and substance said to plaintiff: "We know you didn't do anything, but once we 'cuff you, we have to arrest you and take you in."

50.     Two or more officers arrested plaintiff: (a) in spite of her visible physical injuries and her claim she had been attacked, while the paternal grandparents apparently were not questioned;  and (b) in spite of the fact that they asked plaintiff no investigative questions, nor used a Chinese or Korean interpreter.

51.     Plaintiff was never asked if she had an umbrella.

52.     Plaintiff was taken to the 109th Precinct and was processed.

53.     While at the Precinct the same female police officer, who had stated that they had to take plaintiff

in after she was cuffed, came up to plaintiff and stated she was sorry, but plaintiff had to "go through the

system" because that was how things were done.

54.     The same police officer told plaintiff that she was "sorry" many times, both at the time of arrest,

then in the police station and then when plaintiff was taken outside to a police car to be taken to the Kew

Gardens Courthouse for arraignment.  The officer followed plaintiff outside and said more than once that

plaintiff could sue the City for what had happened to her and she would get "a lot of money."

55.     In spite of the fact plaintiff was the victim, plaintiff was arrested, charged and arraigned for the

following charges: (a) NY Penal Law 120.00-1, Assault in the Third Degree with Intent to Cause Physical

Inj. and (b) NY Penal Law 240.26-1, Harassment in the Second Degree, under docket CR-012031-19QN.

56.     All defendants agreed, cooperated, participated and conspired with their codefendants herein to

assist in and effectuate plaintiff's unlawful arrest, detention and malicious prosecution for crimes they

knew she did not commit and in so doing deprived plaintiff of the rights, privileges and immunities secured

by the Constitution of the United States, including, but not limited to, her rights under the Fourth and

Fourteenth Amendments to the United States Constitution to be free from unreasonable searches and

seizures and to be prosecuted without due process of law or probable cause.

57.     Following the arrest, plaintiff underwent prosecution.  However, the undersigned attorney called

the Queens County District Attorney's Office and on May 15, 2019, the case was dismissed prior to the

plaintiff's first appearance, acknowledging the baseless arrest without probable cause.

58.     Since this incident, plaintiff is very afraid now of the police.  She has problems sleeping and is very

nervous as a result.  Anyone could see from her bruises she had been a victim.  Defendant has been seeking therapy in connection with the fears that she endured for this unlawful arrest and prosecution.

59.     Plaintiff was fired from her second job as she had no chance to call.

60.     The amount of damages sought in this action exceeds the jurisdictional limits of all lower Courts that might otherwise have jurisdiction.

### FIRST CLAIM AGAINST ALL DEFENDANTS

### (False Arrest/Detainer Claim Under 42 U.S.C. § 1983)

61.     Plaintiff restates and realleges the allegations contained in Paragraphs "1" to "60" above as if set forth more fully herein.

62.     All defendants, while acting in concert and, upon information and belief, within the scope of their employment and authority, and without a warrant, seized plaintiff, forcibly put plaintiff into handcuffs in spite of her visible bruises, placed plaintiff under arrest without any reasonable cause to belief that plaintiff had committed, was committing or was about to commit any offense, and caused plaintiff to be detained at two places, and thereby deprived plaintiff of her rights, liberties and freedoms under the color of state law, including plaintiff's right to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

63.     Wherefore, plaintiff demands judgment in the sum of $500,000.00.

### SECOND CLAIM AGAINST ALL DEFENDANTS

### (Malicious Prosecution Claim Under 42 U.S.C. § 1983)

64.     Plaintiff restates and realleges the allegations contained in Paragraphs "1" to "63" above as if set forth more fully herein.

65.     Defendants, acting in concert and, upon information and belief, within the scope of their

employment and authority, caused plaintiff to be prosecuted with malice and without probable cause—a prosecution terminated in plaintiff's favor—in violation of plaintiff's right to be free from unreasonable seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

66.     Wherefore, plaintiff demands judgment in the sum of $500,000.00.

### THIRD CLAIM AGAINST ALL DEFENDANTS

### (Malicious Abuse of Process Claim Under 42 U.S.C. § 1983)

67.     Plaintiff restates and realleges the allegations contained in Paragraphs "1" to "66" above as if set forth more fully herein.

68.     Defendants, acting in concert and, upon information and belief, within the scope of their employment and authority, employed regularly issued process against plaintiff compelling the performance or forbearance of prescribed acts.  The purpose of activating the process was intent to harm plaintiff without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to plaintiff which was outside legitimate ends of the process.  Such collateral objective included, but was not limited to, covering up defendants' illegal actions in knowingly arresting plaintiff without any legal basis, justification or probable cause.

69.     The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and that by virtue of the aforementioned acts, plaintiff was deprived of her rights, privileges and immunities secured by the Constitution of the United States, including her rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable searches and seizures and to due process of law or prosecution only under probable cause.

70.     Wherefore, plaintiff demands judgment in the sum of $500,000.00.

**FOURTH CLAIM AGAINST ALL DEFENDANTS**

**(Failure to Intervene Claim Under 42 U.S.C. § 1983)**

71.     Plaintiff restates and realleges the allegations contained in Paragraphs "1" to "70" above as if set forth more fully herein.

72.     Each individual defendant had an affirmative duty to intervene on behalf of plaintiff, whose constitutional rights were being violated in that defendants' presence by other defendants, but failed to intervene to prevent unlawful conduct, despite having had a realistic opportunity to do so, in violations of plaintiff's rights under the First, Fourth and Fourteenth Amendments to the United States Constitution.

73.     Wherefore, plaintiff demands judgment in the sum of $500,000.00.

**FIFTH CLAIM AGAINST ALL DEFENDANTS**

**(Conspiracy Claim Under 42 U.S.C. § 1983)**

74.     Plaintiff restates and realleges the allegations contained in Paragraphs "1" to "73" above as if set forth more fully herein.

75.     Defendants agreed, cooperated, participated and conspired to assist in and effectuate plaintiff's unlawful arrest, detainer and malicious prosecution for crimes she did not commit, and in so doing deprived plaintiff of her rights, privileges and immunities secured by the Constitution of the United States, including, but not limited to, her rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable searches and seizures and to due process of law.

76.     Wherefore, plaintiff demands judgment in the sum of $500,000.00.

**SIXTH CLAIM AGAINST ALL DEFENDANTS**

**(Violation of Due Process Claim Under 42 U.S.C. § 1983)**

77.     Plaintiff restates and realleges the allegations contained in Paragraphs "1" to "76" above as if set

forth more fully herein.

78.     By the conduct and actions described above, defendants while engaged under color of state law, conspired to interfere with and violate rights secured to plaintiff by the Constitution of the United States in violation of 42 U.S.C. § 1983, including, but not limited to, plaintiff's Fourth, Sixth and Fourteenth Amendment rights.

79.     Defendants, through the actions alleged above, consciously disregarded known and excessive risks to plaintiff's liberty and welfare and engaged in a deliberate and unjustified effort to manufacture guilt against plaintiff in furtherance of a plan to secure and sustain a conviction against plaintiff at all costs.

80.     By refusing to question plaintiff about the facts and to adhere to a false narrative more or less created by defendant P.O. Gigante, who signed the Complaint, and P.O. John Doe and P.O. Jane Doe, who unreasonably restrained plaintiff, all defendants joined in to deprive plaintiff of her right to due process.

81.     Wherefore, plaintiff demands judgment in the sum of $500,000.00.

**SEVENTH CLAIM AGAINST ALL DEFENDANTS**

**(Municipal Liability "Monell" Claim Under 42 U.S.C. § 1983)**

82.     Plaintiff restates and realleges the allegations contained in Paragraphs "1" to "81" above as if set forth more fully herein.

83.     The individual defendants, singly and collectively, while acting within the scope of their employment and authority, upon information and belief, and under color of state law, engaged in conduct that constituted customs, policies, practices, procedures, rules or usages of the NYPD and its officers and their specific precinct(s) forbidden by the Constitution of the United States, under Monell v. Dept. of Soc. Servs. of N.Y., 436 U.S. 658, 690-91, 98 S.Ct. 2018 (1978).

84.     The foregoing customs, policies, practices, procedures, rules and usages include, but are not limited

Page **11** of **15**

to, making arrests without probable cause, initiating and continuing prosecutions without probable cause, and committing perjury.  This includes, without limitation, as practices of defendant City and NYPD:

(a.)   police officers, more or less, randomly assigning roles of perpetrator and victim to parties when responding to a call to a scene of crime or mayhem;

(b.)   failure of responding officers to properly assess facts at a scene, failing to properly locate and assess evidence in connection with claims of parties at scene;

(c.)   officers at the scene of a call failing to employ qualified language interpreters;

(d.)   practice of police officers to forge ahead with an arrest once a suspect is handcuffed; and

(e.)   defendants City and NYPD having notice of the deficits of the foregoing, failing to curb or control the use of said practices.

85.   The abuse to which plaintiff was subjected was consistent with an institutionalized practice of defendant NYPD, which is known and ratified by defendant City.

86.   Despite knowledge of these institutionalized practices, defendant City has at no time taken any effective action to prevent NYPD personnel from continuing to engage in this type of misconduct.

87.   Defendant City had prior notice of the vicious propensities of defendants, but took no steps to train them, correct their abuse of authority or to discourage their unlawful use of authority.

88.   The failure of defendant City to properly train defendants included the failure to instruct them in applicable provisions of the State Penal Law of the State of New York, federal and state constitutional limitations and the proper and prudent use of force.

89.   Defendant City authorized, tolerated as institutionalized practices and ratified the misconduct detailed above by, among other things:

(a.)   failing to properly discipline, train, restrict and control employees, including defendants, known to

be irresponsible in their dealings with citizens of the community;

(b.)      failing to take adequate precautions in the training, hiring, promotion and retention of police personnel, including specifically defendants herein;

(c.)      failing to forward to the offices of Queens DA evidence of criminal acts committed by police personnel;

(d.)      failing to establish or assure the functioning of a bona fide and meaningful departmental system for dealing with complaints of police misconduct, but instead responding to these types of complaints with bureaucratic power and official denials calculated to mislead the public; and

(e.)      that failure to supervise and/or train by defendant City of defendants herein rose to the level of deliberate indifference to the consequences of its actions, and indifference to plaintiff's rights, privileges and immunities secured by the Constitution of the United States of America, *inter alia*, plaintiff's Fourth and Fourteenth Amendment rights.

90.      The NYPD has inadequately screened, hired, retained, trained and supervised its employees, including the individual defendants herein, to respect the constitutional rights of those individuals with whom NYPD police officers come into contact.

91.      The foregoing customs, policies, practices, procedures, rules and usages constituted deliberate indifference to plaintiff's safety, well-being and constitutional rights.

92.      The foregoing customs, policies, practices, procedures, rules or usages were the direct and proximate cause of the constitutional violations suffered by plaintiff.

93.      The foregoing customs, policies, practices, procedures, rules or usages were the moving force behind the constitutional violations suffered by plaintiff.

94.      Wherefore, plaintiff demands judgment in the sum of $500,000.00.

### Eighth Claim Against All Defendants

### (Violation of Plaintiff's Rights Under the New York State Constitution)

95.     Plaintiff restates and realleges the allegations contained in Paragraphs "1" to "94" above as if set forth more fully herein

96.     Defendants, acting in concert and, upon information and belief, within the scope of their employment and authority violated plaintiff's right to be free of unreasonable and unlawful searches and seizures under Article I, § 12 of the New York State Constitution.

97.     Defendants, acting in concert and, upon information and belief, within the scope of their employment and authority, consciously disregarded known and excessive risks to plaintiff's liberty and welfare and engaged in a deliberate and unjustified effort to manufacture guilt against plaintiff in furtherance of a plan to secure and sustain an unjust conviction against plaintiff.

98.     Upon information and belief, this included a course of conduct and patter of behavior whereby defendants, *inter alia*, created and fabricated evidence to create the appearance of probable cause to believe that plaintiff had committed one or more offenses, intentionally and maliciously concealed material exculpatory evidence and unduly influenced the statements and testimony of witnesses by means of coercion, violence or deceit.

99.     That by virtue of the aforementioned acts, defendants deprived plaintiff of her liberty and property without due process of law, in contravention of Article I, § 6 of the New York State Constitution.

100.     Defendant City is also liable for the damages suffered by plaintiff as a result of the conduct of its agents, servants and/or employees under the doctrine of *respondeat superior*.

101.     Wherefore, plaintiff demands judgment in the sum of $500,000.00.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff demands the following relief jointly and severally against all the defendants:

(a.)   Compensatory damages in an amount to be determined at trial;

(b.)   Punitive damages in an amount to be determined at trial;

(c.)   Attorney's fees pursuant to 42 U.S.C. § 1988;

(d.)   An award of plaintiff's costs of suit;

(e.)   Pre-judgment and post-judgment interest;

(f.)   An award of the foregoing of no less than $500,000.00, as estimated by plaintiff; and

(g.)   Such other and further relief as this Court deems just and proper.

Dated:        August 10, 2020

Michael R. Curran
Attorney at Law
98-120 Queens Boulevard, Suite #1-C
Rego Park, New York 11374-4414
(718) 830-0246, ext. 127/(718) 820-7741 (tels.)
(718) 830-9088 (facsimile)
mrc4law@yahoo.com

*Attorney for Plaintiff*